MORGAN, LEWIS & BOCKIUS LLP
RICHARD W. ESTERKIN, State Bar No. 70769
PRESCOTT LITTLEFIELD, State Bar No. 259049
300 South Grand Avenue, Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel:  213.612.2500
Fax:  213.612.2501

Counsel for Debtor and Debtor in Possession,
Boneyard, LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>BONEYARD, LLC,<br><br>     Debtor, | Case No. 8:09-BK-23930-ES<br><br>Chapter Number: 11<br><br>**NOTICE OF MOTION AND MOTION TO SELL REAL PROPERTY FREE AND CLEAR OF INTERESTS; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF GEOFFREY LEPLASTRIER AND JAMES BOYD IN SUPPORT THEREOF**<br><br>Date: January 14, 2010<br>Time: 10:30 a.m.<br>Ctrm: 5A |

TO THE PARTIES HERETO AND TO THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that, on January 14, 2010, at 10:30 a.m., before the Honorable Erithe A. Smith, United States Bankruptcy Judge, in Courtroom 5A of the above entitled court, located at the Ronald Reagan Federal Building and United States Courthouse, 411 West Fourth Street, Santa Ana, California, Debtor and Debtor in Possession Boneyard, LLC will, and hereby does, move for the entry of an order:  (a) authorizing it to sell certain real property to Toll Bros, Inc. pursuant to the terms and conditions of the *Purchase and Sale Agreement and Joint Escrow Instructions* in the form attached hereto as Exhibit 1 free and clear of any interests in such property pursuant to the provisions of Bankruptcy Code sections 363(b) and 363(f)(3); and (b) in

1  the event that a sale to an entity other than Toll Bros., Inc. is approved by this Court (other than as

2  a result of a credit bid by a secured creditor), that the Debtor be authorized to pay Toll Bros., Inc.

3  a break-up fee and expense reimbursement in the sum of $500,000.

4  The foregoing motion will be base upon this notice of motion and motion, the attached

5  Memorandum of Points and Authorities and Declarations of Geoffrey Le Plastrier and James

6  Boyd, such evidence and argument as may be filed in conjunction with any reply to any

7  opposition to this motion that may be filed and such argument as may be presented at the time of

8  the hearing of this motion.

9  Pursuant to the provisions of Local Rule 9013-1(f) of the United States Bankruptcy Court

10  for the Central District of California, any objection or response to this motion, and any evidence

11  in support of such response or objection, must be filed with the Court and served upon the

12  undersigned at least fourteen (14) days prior to the hearing date of the motion, set forth above.

13  Pursuant to Local Rule 9013-1(h), the failure to timely file and serve a written objection or

14  response to this motion may be deemed by the Court to constitute a consent to the granting of the

15  relief requested in this motion.

16  Dated: December 16, 2009

MORGAN, LEWIS & BOCKIUS LLP
RICHARD W. ESTERKIN
PRESCOTT LITTLEFIELD


By    /s/ Richard W. Esterkin
Richard W. Esterkin
Counsel for Debtor and Debtor in
Possession, Boneyard, LLC

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/21469316.1

2

# MEMORANDUM OF POINTS AND AUTHORITIES

Debtor and debtor in possession Boneyard, LLC (the "**Debtor**") respectfully submits the following Memorandum of Points and authorities in support of the instant motion:

## I.
## INTRODUCTION

The Debtor and Luckey Industrial, LLC ("**Luckey**") are single asset real estate entities that are under common ownership. The real properties owned by the Debtor and Luckey are subject to trust deeds in favor of Pacific Western Bank (the "**Bank**") securing a single loan in the approximate amount of $13.5 million. That loan is presently in default, with foreclosure sales of the Debtor's real property (the "**Property**") scheduled for February 17, 2010 and Luckey's property on December 22, 2009.[1] The purpose of this chapter 11 case, and the chapter 11 case to be filed by Luckey, is to preserve the equity that exists in the combined properties owned by the Debtor and Luckey for the benefit of their unsecured creditors and equity holders.

The Debtor's only material assets are: (a) the real property to be sold pursuant to this motion, (b) 21 lots adjacent to the real property to be sold pursuant to this motion which the Debtor is obligated to convey to Barto/Signal Hill Petroleum, Inc. ("Signal Hill") and for which the Debtor is to receive a total of $630,000 and (c) two bank accounts, each of which hold approximately $250,000, one of which is subject to the Bank's lien and the other of which is not. The sale for which approval is sought in this motion is to Toll Bros., Inc. ("Toll"), a wholly owned subsidiary of a New York Stock Exchange company with a market capitalization of nearly $3 billion, for $11 million, all cash, and is to close on or before January 15, 2010. Pursuant to the terms of the proposed sale agreement, by the date of the hearing of this motion, all contingencies to the sale will have been removed.[2] Thus, if this Court approves this motion, there is virtually no doubt that the proposed sale will close.

Following the sale, the Bank will be owed approximately $2.25 million (the present $13.5 million debt less the $11 million sale price and $250,000 in cash collateral being held by the

---

[1] A foreclosure sale of the Property was scheduled for December 15, 2009 at the time that the Debtor filed the voluntary petition initiating this case. As a result of the automatic stay, that sale has been postponed to February 17. 2010.

[2] The sale agreement does **not** contain a financing contingency.

Bank) and the Debtor will have in excess of $250,000 in cash that is presently on deposit. The Bank's remaining debt will continue to be secured by the Luckey property, which is worth in excess of $5 million. Thus, after the present sale closes, the Bank will enjoy a substantial equity cushion in the Luckey case, which will then make a plan of reorganization feasible in that case.

As reflected in the attached declaration of Geoffrey LePlastrier, the Debtor's principal, the Debtor engaged in substantial efforts to market the Property prior to the date upon which it filed the voluntary petition commencing this bankruptcy case. Ultimately, Mr. LePlastrier, who is an experienced, sophisticated real estate developer, concluded that the proposed sale offered the best opportunity for the Debtor and its related company to salvage their equity in light of the Bank's imminent foreclosure sales on its trust deeds, the price to be paid by Toll, the lack of contingencies in the sale agreement and Toll's obvious ability to close the proposed sale, when scheduled. Accordingly, the Debtor respectfully submits that the proposed sale should be approved by this Court.

## II.
## STATEMENT OF FACTS

The Debtor is a limited liability company whose sole member if Le Plastrier Management Co., Inc. ("Le Plastrier Management"). Le Plastrier Management is also the sole member of Luckey Industrial, LLC.

The Debtor is the owner of a parcel of real estate that consists of 106 lots and common area being held for residential development. That property is subject to a trust deed in favor of the Bank securing a debt of approximately $13.5 million.

Luckey also owns certain real property which is subject to a trust deed in favor of the Bank securing a guarantee of the debt that is also secured by the Debtor's property. Although neither the value of the Debtor's property nor the value of Luckey's property exceeds the amount owed to the Bank, in combination, the properties are worth more than is owed to the Bank.

The present motion seeks authority for the Debtor to sell its real property to Toll for approximately $11 million. If approved, the sale will have two effects. First, the sale will reduce the amount owed to the Bank to approximately $2.5 million, creating equity in Luckey' property

and enabling Luckey to restructure the debt encumbering its property and avoiding losing that property to foreclosure. Second, the sale will result in Toll replacing certain bonds that were posted in order to secure the entitlements to the Debtor's property.[3] As a result, the cash collateral securing letters of credit backing those bonds, in the total sum of approximately $500,000, will become available to the Debtor, enabling the Debtor to further reduce the amount owed to the Bank, as well as pay the administrative expenses of this chapter 11 case and fund a dividend to unsecured creditors.

## III.
## THE SALE OF THE DEBTOR'S REAL PROPERTY OUGHT TO BE APPROVED

### A.    A Sale Ought to Be Approved

Bankruptcy Code section 363(b)(1) provides that the Debtor may sell property of its estate other than in the ordinary course of the Debtor's business "after notice and a hearing." Sales of estate property are generally approved where a debtor can demonstrate "some articulated business justification for . . . selling . . . property outside the ordinary course of business . . . ." *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19-20 (Bankr. 9th Cir. 1988). A debtor's application of its sound business judgment is subject to great judicial deference. *In re Moore*, 110 B.R. 924 (Bankr. C.D. Cal. 1990).

Here, at the time that the Debtor filed its voluntary petition, the Property was on the verge of foreclosure. There was no guarantee that anyone, other than the Bank, would appear at the scheduled foreclosure sale, or that the Bank would bid at least the true fair market value of the Property at the trustee's sale under its trust deed. After substantial marketing efforts, the Debtor was able to negotiate a purchase agreement with Toll that will yield at least $11 million in credit against the Bank's debt in relation to the Luckey property and minimize the Bank's unsecured deficiency claim against the Debtor's estate, thereby maximizing the recovery of the Debtor's unsecured creditors from the approximately $250,000 of cash that will be released as a result of the sale. Accordingly, there is a sound business reason for the proposed sale, and, because the

---
[3]   See Sale Agreement at ¶ 6.5.

1    sale price and terms are reasonable, absent an overbid at the sale hearing, the Debtor believes that

2    the proposed sale ought to be approved.

3    **B.    Sale Procedures**

4        In order to expedite the closing of the proposed sale, the Debtor has not obtained an order

5    establishing bidding procedures for the proposed sale. Therefore, the Debtor respectfully requests

6    that the Court conduct the sale as follows:

7        1.    **Break-up Fee**. Article 12 of the proposed contract provides for the payment of a

8    break-up fee to Toll in the sum of $500,000 from the sale proceeds in the event that this Court

9    approves a sale of the Property to a buyer other than: (a) Toll or (b) the Bank. The Debtor

10    hereby requests that the Court authorize such payment in any order that the Court may enter

11    approving the sale to a party other than: (a) Toll or (b) the Bank.

12        2.    **Bidding Increments**. Should another buyer wish to submit an overbid for the

13    Property at the hearing of this motion, the Debtor requests that the Court establish the following

14    minimum bidding increments: (a) for the first bid, assuming that the Court determines to approve

15    the requested break-up fee, $600,000 and (b) for all further overbids, $100,000. Given the

16    amount of the proposed sale, the Debtor believes that bidding increments of $100,000 are

17    reasonable and that the first overbid should be required to reimburse the Debtor for any break-up

18    fee that this Court may authorize plus the minimum increased bid of $100,000.

19        3.    **Deposit**: The proposed purchase agreement provides for a good faith deposit of

20    $100,000, which has been made by Toll. The Debtor requests that, in order for a bidder to qualify

21    for bidding, that the bidder must provide the Debtor with good funds (cash or a cashiers check) in

22    the sum of $100,000 at the time that such bidder's bid is accepted as the winning bid.

23        4.    **Credit Bid**. Pursuant to Bankruptcy Code section 363(k), the Bank should be

24    permitted to credit bid at the sale hearing up to the amount of its debt, which the Debtor believes

25    to be $13.5 million.

26    ///

27    ///

28    ///

# IV.
# THE SALE SHOULD BE APPROVED FREE AND CLEAR

Bankruptcy Code section 363(f)(2) and (3) permits this Court to sell property of the Debtor's estate free and clear of interests, including liens, if: "(2) such entity [holding an interest in the property to be sold] consents" or if: "such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens against the property . . . " In this case, the Bank has not yet consented to the proposed sale. Nevertheless, it may do so in advance of the hearing on this motion, either explicitly or by failing to object to this motion. *See,* Local Rule 9013-1(h). Should such consent be forthcoming, and should this Court determine to authorize the proposed sale, the sale order should provide that the sale is free and clear of all interests, including the Bank's lien.

Should the Bank object to the proposed sale, a sale and free and clear of the Bank's lien would still be authorized pursuant to the provisions of Bankruptcy Code section 363(f)(3). Section 363(f)(3) imposes a two part test: (a) the interest to which that section applies must be a lien and (b) the sales price must be greater than "the aggregate value of all liens against the property." It is indisputable that the Bank's interest in the Property is a lien. Therefore, the only issue before the Court is whether or not the sales price exceeds the value of the Bank's lien.

In *Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25 (Bankr. 9th Cir. 2007), the debtor's real property was encumbered by first and second liens. The bankruptcy court approved a sale free and clear to the first lien holder as the result of a credit bid that did not yield any proceeds for the second lien holder. The second lien holder appealed from the sale order. Noting a split in authority on the issue, the Panel held that Section 363(f)(3) did not authorize the sale free and clear because, if the statutory language ("and the price at which such property is to be sold is greater than the aggregate value of all liens on such property") were read as referring to only the secured portion of the lienholder's claim, the sales price would fix the amount of the secured claim and, as a result, the sales price would equal, and not be greater than, the value of the lien.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/21469316.1

7

The Panel's analysis in *Clear Channel* is wrong for the two reasons.[4] First, the statute refers to "the aggregate value of all liens on such property." If Congress had meant to refer to the amount of the <u>claims</u> secured by liens upon the property to be sold, it would have said so. It did not. The language of the statute refers to the "value" of the <u>liens</u> upon the property and the value of the liens on the property can only refer to the equity in the property available to pay the claims secured by liens upon the property, not the amount of the claims themselves.

Second, the Panel's conclusion that the sale price must equal the "value" of the liens against the property is incorrect. Bankruptcy Code section 506(a) prescribes how the "value" of a secured creditor's interest in property of a bankruptcy estate is to be determined. That Section provides that:

> Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property. . .

11 U.S.C. § 506(a). The purpose of the valuation directed by Section 363(f)(3) is to compare the proposed sale price of encumbered property to the "value of all liens on such property." Those values could vary considerably. For example, a debtor that owned a manufacturing plant might try to sell a piece of equipment in its manufacturing line free and clear of a lien held by a secured creditor in the entire plant, including the piece of equipment to be sold. Under those circumstances, the sale price of a single piece of equipment might be considerably lower than the value of the lien, because the sale of the piece of equipment would render the entire plant inoperable, reducing the value of the secured creditor's lien by substantially more than the sale price.[5] On the other hand, the sale price of the property to be sold may be in excess of the value of the liens against the property. For example, as in this case, the Debtor proposes to sell the Property, with the only costs of sale being standard escrow fees and title charges. In order to

---

[4] While potentially persuasive, this Court is not bound by the Panel's decision in *Clear Channel*. *In re Enriquez*, 244 B.R. 156, 159 (Bankr. S.D. Cal. 2000) (*abrogated* on other grounds by *Zimmer v. PSB Lending Corp. (In re Zimmer)*, 313 F.3d 1220, 1225 n.3 (2002)) ("[T]his Court concludes in light of *Bank of Maui* that as a matter of law it is not bound by a decision of the Ninth Circuit BAP unless the decision made by the BAP was in the very case before this Court."). *See also*, Obregon, *In re Globe Illumination Co.: A Provocative But Flawed Theory on the Precedential Value of BAP Authority*, 21 Cal. Bankr. J. No. 1 45 (1993).

[5] This would likely be the case even if a substitute piece of machinery could be located because the purchase price of the substitute machinery may exceed the sale price of the estate property. In addition, there would likely be expenses to install the new piece of machinery that increase the replacement cost of the machinery above the amount received on the existing machinery.

determine the value of the liens against the property, this Court would have to start with the value of the property (presumptively, $11 million) and subtract the lien holders' foreclosure costs, brokerage fees to locate a buyer and costs of sale, such as the escrow fees and title charges provided for in the proposed sale contract. In this case, because the proposed sale will not require the payment of any foreclosure costs or brokerage fees, the "price at which such property is to be sold is greater than the aggregate value of all liens on such property." As a result, Section 363(f)(3) authorizes this Court to enter an order selling the property to Toll free and clear of the Bank's lien.

In addition to being wrong, the facts in *Clear Channel* are distinguishable from those in this case. In *Clear Channel*, estate property was sold free and clear of a second lien to the holder of a first lien as a result of a credit bid by the first lien holder. In order for the second lien holder to protect its lien at the sale, it would have been required to pay cash up to the amount of the first lien, over $40 million. Thus, the second lien holder's ability to credit bid pursuant to Section 363(k) did not protect the second lien holder's economic interest in the property. Here, the Bank holds a first lien on the Property and, if it believes that the proposed purchase price is inadequate, it can credit bid so much of its secured claim is it wishes and acquire the Property. This is, of course, precisely the same result as would occur were the Bank to obtain relief from the automatic stay and complete its foreclosure sale of the Property. Thus, from an economic standpoint, the only differences between this Court authorizing the proposed sale and granting the Bank relief from the automatic stay are: (a) there is a floor on the sale price of the Property that would not exist in a foreclosure sale, (b) there is a comprehensive contract of sale, including various warranties and representations by the Debtor that would not exist at a foreclosure sale, increasing the sale price for the property, (c) there will be a comprehensive notice of the sale to interested parties, maximizing the chances for competitive bids at the sale hearing before this Court and (d) the Bank will not incur substantial foreclosure costs. Thus, unlike the second lien holder in *Clear Channel*, who was faced with the daunting task of coming up with $40 million in cash to protect its interests, in this case, the Bank's economic interests are not only fully protected by its ability to credit bid, but are actually enhanced by the orderly sale process being overseen by this Court.

## V.
## CONCLUSION

The express language of Section 363(f)(3) authorizes a sale of the Property free and clear of the Bank's interest and such a sale is clearly in the economic interest of the Bank and of the Debtor. Accordingly, it is respectfully submitted that this motion should be granted and the sale of the Property to Toll, or such higher bidder as may appear at the sale hearing, be approved.

Dated: December 16, 2009

MORGAN, LEWIS & BOCKIUS LLP
RICHARD W. ESTERKIN
PRESCOTT LITTLEFIELD


By   /s/ Richard W. Esterkin
    Richard W. Esterkin
    Counsel for Debtor and Debtor in
    Possession, Boneyard, LLC

| In re:<br>BONEYARD, LLC<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER 8:09-bk-23930-ES |
|---|---|

NOTE: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
300 South Grand Avenue, 22nd Floor, Los Angeles, CA 90071

A true and correct copy of the foregoing document described NOTICE OF MOTION AND MOTION TO SELL REAL PROPERTY FREE AND CLEAR OF INTERESTS; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF GEOFFREY LEPLASTRIER AND JAMES BOYD IN SUPPORT THEREOF will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On December 16, 2009, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Richard W Esterkin    resterkin@morganlewis.com
United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On December 16, 2009, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
VIA U.S. MAIL
Honorable Erithe A. Smith
Ronald Reagan Federal Building
411 West Fourth Street, Suite 5041
Santa Ana, CA 982701-4593

☒ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| December 16, 2009 | Victoria L. Rader | *Victoria L. Rader* |
|---|---|---|
| Date | Type Name | Signature |

| In re:<br>BONEYARD, LLC | | CHAPTER 11 |
|---|---|---|
| | Debtor(s). | CASE NUMBER 8:09-bk-23930-ES |

## II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL

VIA U.S. MAIL:

| | | |
|---|---|---|
| Leighton and Associates Inc<br>17781Cowan Suite 200<br>Irvine, CA 92614-6009 | Armstrong Robitaille Reigle<br>2127 W Orangewood Suite 100<br>Orange, CA 92868 | Warmington Homes<br>3090 Pullman Street<br>Costa Mesa, California 92626 |
| Olson Urban Housing<br>3010 Old Ranch Parkway, Suite 100<br>Seal Beach, CA 90740 | Christopher Homes<br>9500 Hillwood Drive, Suite 200<br>Las Vegas, NV 89134 | William Lyon Homes<br>4490 Von Karman Avenue<br>Newport Beach, CA 92660 |
| MBK Homes<br>962 Junipero Drive<br>Costa Mesa, CA 92626 | Watt Communities<br>2716 Ocean Park Blvd., Suite 2025<br>Santa Monica, CA 90405 | New West Homes<br>450 Newport Center Drive, Suite 480<br>Newport Beach, CA 92660 |
| Standard Pacific Homes<br>13340 Beach Avenue<br>Marina del Rey, CA 90292 | Toll Brothers<br>4204 Valley View Ave<br>Yorba Linda, CA 92886 | Oaktree Capital Management, L.P.<br>333 South Grand Avenue, 28th Floor<br>Los Angeles, CA 90071 |
| Alta Verde Group<br>315 South Beverly Drive, Suite 208<br>Beverly Hills, CA 90212 | California Real Estate Advisors<br>One half Marguerite Ave<br>Corona Del Mar, CA 92625 | Trumark Homes<br>9911 Irvine Center Drive, Suite 150<br>Irvine, CA 92618 |
| Long Beach Water Department<br>1800 East Warlow Road<br>Long Beach, CA 90807 | Pacific Western Bank<br>10250 Constellation Blvd Suite 1640<br>Los Angeles, CA 90067 | Kabo Equipment Inc<br>2973 Harbor Blvd Suite 487<br>Costa Mesa, CA 92626 |
| Los Angeles County Tax Collector<br>Kenneth Hahn Hall of Administration<br>225 North Hill Street Room 109<br>Los Angeles, California 90012 | Barto Signal Petroleum Inc<br>Attn Dave Slater<br>2901 Orange Ave<br>Signal Hill, CA 90806 | Le Plastrier Management Co Inc<br>Attn Geoffrey R Le Plastrier<br>19800 MacArthur Blvd Suite 1150<br>Irvine, CA 92612 |
| The Alamitos Ridge LLC<br>Attn Geoffrey R Le Plastrier<br>19800 MacArthur Blvd Suite 1150<br>Irvine, CA 92612 | Mesa Verde Development<br>95 Argonaut, Suite 160<br>Aliso Viejo, CA 92656 | LandCap Partners<br>2000 Avenue of the Stars<br>Los Angeles, CA 90067 |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009* **F 9013-3.1**
DB2/21469316.1